# M'Dermond et al. *v.* Kennedy.

[ MAY, 1839. ]

A municipal corporation, under a power to make such by-laws as shall be necessary " to promote the peace, good order, benefit and advantage of the borough," and to assess such taxes as shall be necessary for carrying the same into effect; is not authorized to levy a tax for the payment of part of the expense to be incurred by a rail-road company in bringing the line of their road nearer to the town than originally located.

ERROR to the common pleas of Cumberland county.

This was an action of trespass, brought in the common pleas of Cumberland county, by the defendant in error against the plaintiffs in error, who were the high constable, (being a collector of taxes) the chief burgess, assistant burgess and town council of the borough of Newville.

The declaration was in common form, charging the defendants with taking and carrying away a dearborn wagon, the property of the plaintiff.

The defendants pleaded specially that James Kennedy was seized of a house and lot in Newville, which was an incorporated borough, having powers under their charter to assess, levy and collect taxes, &c.; that a tax was assessed upon the property of the plaintiff, that a warrant was given to Joseph M'Dermond to collect the same, and that the wagon was taken by virtue thereof, for the payment of the said tax. The object of the parties was to decide the question of law, which arose upon the following facts:

In 1835, the Cumberland Valley rail-road company had located their road at the crossing of Big Spring, about one mile above the borough of Newville. An application was made to the board of directors, by the citizens of Newville, so to change the location as to bring the road near to the town, that it might derive advantages from the trade and travel which it would bring. The location thus prayed

[ M'Dermond *v.* Kennedy. ]

for was more expensive to the company, to the amount of about $5,000, and it was proposed, that if the borough of Newville and citizens, would subscribe one-half of the expense, ($2,500) the company would make the alteration, and so locate the road as that the borough of Newville would derive the advantages. Individuals interested in the borough did subscribe $1,500, and nine-tenths of the property holders of the borough petitioned their council to subscribe, on behalf of the borough, $1,000. In consequence of which an ordinance was passed, making the subscription of $1,000, payable, one-third on the 1st of April, 1836, one-third when the work is half-finished, and the residue when the work shall be completed; and authorizing a loan to be made, on the faith of the borough, to meet the payments. The loan was obtained, and the money paid by the borough to the rail-road company. Subsequently, the council of the borough assessed a tax of five mills on the dollar, " for the purpose of defraying the current expenses of the borough." It was the collection of this tax from the plaintiff, James Kennedy, by the levy on his wagon, which was the trespass complained of. The counsel of the respective parties agreed to put the cause upon the question, whether the borough of Newville had the legal power to make such a subscription to the Cumberland Valley rail-road company, as had been made, and to assess and collect taxes for its payment.

The sixth section of the act of incorporation, passed the 6th of February, 1817, provides that it shall be the duty of the town council to hold quarterly meetings, &c., " at which meetings they may make, enact, revise, repeal and amend all such by-laws, rules, regulations and ordinances as shall be determined by a majority of them, necessary to promote the peace, good order, benefit and advantages of the said borough; particularly, of providing for the regulation of the markets, improving, repairing and keeping in order the streets, lanes, alleys and highways, ascertaining the depths

[ M'Dermond *v.* Kennedy. ]

of vaults, sinks, pits for necessary houses, and making permanent rules relative to the foundation of buildings, party walls and fences; they shall have power to assess, apportion and appropriate such taxes as shall be determined by a majority of them necessary for carrying the said rules and ordinances from time to time into complete effect; and also to appoint a town clerk, treasurer, two persons to act as street and road supervisors, a clerk of the market, and a collector, annually, and such other officers as may be deemed necessary from time to time, and the same officers from time to time to remove for misdemeanor in office; which meetings of the said town council shall be held at such convenient place as a majority of them shall think proper, in said borough, until a town house is erected: *Provided,* that no by-law, rule, or ordinance of the said corporation shall be repugnant to the constitution or laws of the United States or of this commonwealth, and that no person shall be punished for a breach of a by-law or ordinance made as aforesaid, until ten days have expired after the promulgation thereof, by at least four advertisements set up in the most public places in said borough: and provided also, that in assessing such tax, due regard shall be had to the valuation of taxable property taken for the purpose of raising county rates and levies, so that the said tax shall not, in any one year, exceed one-half cent in the dollar of such valuation, unless some object of general utility shall be thought necessary, in which case a majority of the taxable inhabitants of said borough shall approve of and certify the same in writing, under their hands, to the town council, who shall proceed to assess the same accordingly."

The defendants requested the court to charge the jury to the following effect: 1. That it was within the scope of the legal powers of the borough authorities of Newville to assess and collect taxes, and it was not the duty of the collector to inquire or know the purpose to which the taxes

[ M'Dermond v. Kennedy.]

were to be applied; and if the appropriation by the council was illegal, the collector (M'Dermond) would not be a trespasser in the execution of his warrant. 2. That under the act of incorporation of the borough of Newville, the town council has the power to levy and assess taxes, and to authorize their collection by a person to be appointed by them for that purpose, to whom it may give authority to collect the same by distress and sale of the goods and chattels of inhabitants liable to taxation. 3. That the inhabitants of any borough or county liable to taxation may not resist the payment of taxes lawfully assessed, because they do not approve of the object for which they are to be applied when collected.

REED, President, charged the jury as follows:—The word borough refers only to corporate rights. The corporation can only act in reference to corporate rights and duties. The officers have no power over private property, except for corporate purposes.

Making a rail-road, not within the limits of the borough, cannot touch or affect corporate rights. It may directly or indirectly affect private rights, but the regulation of private rights is not vested in the borough. How could the borough be benefited or injured by the rail-road? It is not a borough subject. It does not touch the borough. It affects no borough rights. The rights alleged to be affected are private rights, never to be intrusted to the management of the corporate functionaries.

The corporation has personal identity to the extent, or for the purposes indicated in the charter, for borough purposes and none else. Borough rights, corporate rights, are distinct from mere private rights of property. If this right is maintained in the borough of Newville, then the inhabitants of Newville have given over " the inalienable right of acquiring, possessing and protecting property;" for, if the council can raise a tax and grant the avails to

[M'Dermond v. Kennedy.]

the rail-road, because they believe it to be to the advantage of the borough, then they may do any thing else which they may deem advantageous, *any thing else*, for there is no connexion, no relation, between the rail-road and the borough.

The officers of the borough are for the borough, for managing the affairs of the borough. By the third section of the act of incorporation, the general purpose of the act is exhibited; they all refer to the borough, to the corporation; the enumeration of the powers in the sixth section also refers to borough purposes, corporate rights, rights which they are to enjoy as an association; the private rights, and private rights of inhabitants distinct from corporate rights, are not embraced. The increase or decrease of the value of a man's house and lot, is not an incident of a corporate, but a private right. Things relating to social convenience and safety, are only embraced in the corporate powers.

Though manufacturing silk, establishing forges and furnaces, constructing a bridge over the Connodoguinet or the Schuylkill, or a turnpike over the north mountain, by the burnt cabins, or any thing else—though any of these should be a direct benefit to the inhabitants of Newville, undisputed, it cannot be that a tax may be raised and appropriated at the mere will of the town council, if not exceeding five mills in the dollar.

If they can appropriate money to a road half a mile from the borough, they may do so at a distance of fifty or one hundred miles.

We conclude, that no tax can be laid for any other than borough purposes, and that the construction of this rail-road was not one. It had nothing to do with the borough —had no connexion with it, had no reference to it, either directly or indirectly.

We think there can be no difficulty as to the fact of a tax having been laid mainly for paying this money to the

[ M'Dermond *v.* Kennedy. ]

rail-road. The minutes of the board exhibit the whole pro-ceeding, and the accounts of the treasurer show the appro-priation. The appropriation to the rail-road was set forth in the minutes, and the ordinance passed for raising a tax; it was raised, and of the three hundred dollars raised in one year, two hundred and seventy-three dollars, or thereabouts, of it was paid to the rail-road company, in accordance with the ordinance of the town council. If these are the facts, in law, the plaintiff would be entitled to recover. Whether a recovery can be had against the collector or not, the plaintiffs cannot, do not, insist, as there are others against whom they allege the action must be sustained. It is stated, too, on the notes by consent, that the main object of the action is to try the right. The mere amount paid by the plaintiff is only asked as damages. The whole is two dollars and ten cents.

The learned judge then proceeded to read and answer the points of the defendants, as follows:

The first point was answered affirmatively, with this qualification; that if the laying of the tax was illegal, for an illegal purpose, on the principles stated in the general charge, and the other defendants are liable on the princi-ples we have stated, as we think they are, and on the issues and the form in which the trial has been had, we think that the collector, M'Dermond, may be liable in law as well as the other defendants. If he had designed to jus-tify under a warrant or authority from the other defend-ants, he should have so pleaded; but he has mixed his fate with theirs, by pleading only the general issue, and going on to trial with them. The second and third points were answered affirmatively, it being said, however, that " when the tax is illegal, for an illegal purpose, they may resist, and if their property be forcibly taken and sold, an action of trespass will lie for the damages."

The jury, under the direction of the court, found a ver-dict for the plaintiff.

[ *M'Dermond v. Kennedy.* ]

The case was taken to the supreme court, on error, and having been argued by *Mr. F. Watts*, for the plaintiffs in error, and by *Mr. Biddle* and *Mr. Williamson*, for the defendant in error, the judgment was affirmed.*

* The result of the publication of the foregoing case was the passage of the act of the 27th March, 1848, whereby the subscription of the city of Philadelphia to the Pennsylvania rail-road company was legalized, and the county of Allegheny, the cities of Pittsburgh and Allegheny, and the municipal corporations of the county of Philadelphia, were empowered to subscribe for shares of the capital stock of the same company, and to borrow money for that purpose. And the further to facilitate such subscriptions, the act of the 15th May, 1850, authorized a majority of the several boards of commissioners of the districts referred to in the prior act, to make such subscriptions;—the charters of some of the corporations requiring a vote of two-thirds for such an object.